**UNITED STATES of America, Plaintiff,**

v.

**Salvador DURAN, aka Salvador Duran Lopez, Defendant.**

**No. 2:04–CR–00396–PGC.**

United States District Court, D. Utah, Central Division.

Feb. 17, 2005.

Veda M. Travis, US Attorney's Office, Salt Lake City, for Plaintiff.

Randy S. Kester, Young Kester & Petro, Salt Lake City, UT, for Defendant.

---

## REVISED MEMORANDUM OPINION AND ORDER FINDING THE GUIDELINES ARE ADVISORY UNDER THE "SAFETY VALVE" PROVISION

CASSELL, District Judge.

Defendant Salvador Duran stands before the court for sentencing. He previously pled guilty to possession with the intent to distribute more than 50 grams of actual methamphetamine—an offense carrying a ten-year mandatory minimum prison sentence. Mr. Duran, however, qualifies for the "safety valve" provision,[1] which allows the court to impose a sentence below the mandatory minimum. The safety valve provision further directs the court to impose any lower sentence "pursuant to" the Guidelines.

■ The government argues that even though the Guidelines have been generally rendered advisory under *United States v. Booker*,[2] the Guidelines nonetheless remain mandatory when the court proceeds under the safety valve. This argument is unpersuasive. *Booker* held that the judicial fact finding inherent in mandatory Guidelines violated the defendant's Sixth Amendment right to a jury trial. That constitutional defect also exists when a court uses the Guidelines to determine a safety valve sentence. Accordingly, to avoid a constitutional defect in the safety valve provision, the Guidelines must be deemed as advisory when the court proceeds under this provision. Therefore, the court will sentence defendant Duran under an advisory Guidelines system.

### The Safety Valve Provision

The safety valve provision—18 U.S.C. § 3553(f)—allows a court to impose a sentence below any mandatory minimum for a drug offense if five criteria are satisfied: (1) the defendant is a first-time offender, (2) he did not use violence or firearms, (3) the offense did not result in serious injury to anyone, (4) the defendant was not an organizer, leader, manager, or supervisor in the offense, and (5) the defendant has given the government all the information that he has regarding the offense. Under the safety valve provision, if the defendant satisfies the five criteria listed above, the court is then directed to impose a Guidelines sentence. The statute states, if the safety valve is met, "the court *shall* impose a sentence *pursuant to* the guidelines promulgated by the United States Sentencing Commission ... without regard to any statutory minimum sentence...."[3] This statute might be read as requiring the court to impose a Guidelines sentence.[4] Indeed, in this case the government argues that the court *must* follow the Guidelines and impose a sentence no lower than the Guidelines sentence. Because both sides agree that the applicable Guidelines range in this case is 87–108 months,[5] the government contends that the court lacks any discretion to impose anything less than an 87–month sentence.

### The "Advisory" Nature of the Guidelines After *Booker*

The government's position is creative and skillfully argued. It founders, however, on the fact that the Guidelines them-

---

1. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.

2. —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

3. 18 U.S.C. § 3553(f) (emphases added).

4. *See United States v. Roman–Zarate*, 115 F.3d 778, 784 (10th Cir.1997) ("Title 18 U.S.C. 3553(f) requires the district court to sentence a defendant according to the sentencing guidelines, rather than imposing the statutory mandatory minimum sentence....").

5. *See* Pre–Sentence Report, ¶ 48, Offense Range of 29, Criminal History of 1.

selves are now advisory. In *United States v. Booker,* the Supreme Court found certain provisions of the Sentencing Guidelines unconstitutional.[6] Specifically, *Booker* held that the Guidelines violated the defendant's Sixth Amendment right to a jury trial by requiring a judge to find facts that resulted in a legally-required lengthier sentence for the defendant.[7] *Booker* then turned to the issue of the remedy for this constitutional defect. In the remedial portion of its opinion, the Court held that by severing the two provisions in the Act that make the Guidelines mandatory, the rest of the sentencing scheme could be preserved.[8] The Court explained that severing these provisions "makes the Guidelines effectively advisory,"[9] thereby eliminating the constitutional problem stemming from the legally binding nature of the judicially-determined facts. The upshot of these holdings, as this court recently explained in *United States v. Wilson,* is that district courts should give "considerable weight" to the Guidelines "in determining what sentence to impose," but are not required to follow the Guidelines.[10]

The advisory Guidelines are not transformed into mandatory Guidelines under the safety valve provision. To the contrary, that provision itself directs the court to impose a sentence "pursuant to" the Guidelines. So long as the court consults the Guidelines in determining an appropriate sentence, any resulting sentence is "pursuant to" the Guidelines. Such a sentence would be "in compliance with" or "authorized by" the Guidelines, as *Black's Law Dictionary* defines "pursuant to."[11]

Any other reading of the safety valve provision would render it unconstitutional under the Sixth Amendment as interpreted in *Booker.* *Booker* emphasized that the Sixth Amendment jury trial guarantee forbids judicial fact-finding of facts that could increase a defendant's sentence. The Court explained, "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."[12] At the same time, however, in the remedial section of the opinion, *Booker* explains that the Federal Sentencing Act, as modified by *Booker,* now requires a sentencing court to consider Guidelines ranges because "[w]ithout the 'mandatory' provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals."[13]

If the government's argument in this case is correct, then the court must treat the Guidelines in a way that *Booker* forbids. Rather than read the safety valve provision as containing a defect, it is far better to read the provision as simply incorporating advisory Guidelines. As *Booker* itself explains, while Congress preferred a mandatory system, "that mandatory system is no longer an open choice."[14] As a result, it is appropriate to follow the conventional rule of statutory construction to

6. *See Booker,* —— U.S. at ——, 125 S.Ct. at 754.

7. *See id.* at 756.

8. *See id.*

9. *Id.*

10. *United States v. Wilson,* 350 F.Supp.2d 910, 911 (D.Utah 2005).

11. BLACK'S LAW DICTIONARY 1250 (7th ed.1999).

12. *Booker,* —— U.S. at ——, 125 S.Ct. at 756.

13. *Id.* at 764.

14. *Id.* at 767.

avoid reading the statute as being constitutionally deficient.[15]

In the future, Congress could, of course, choose to modify the safety valve statute so that qualifying defendants simply dropped from one mandatory minimum sentence to another lower mandatory sentence. For example, Congress could provide that anyone subject to a ten-year mandatory minimum who meets the safety valve criteria would then be subject to, say, a five-year mandatory minimum. But that is not they way the statute is currently drafted. If *Booker* means anything, it is that Congress is not free to say, in effect, that anyone subject to a ten-year mandatory minimum who meets the criteria must then face unconstitutional judicial fact-finding in the determination of the final sentence. In other words, the safety valve provision does not work some kind of Sixth Amendment alchemy and transform unconstitutionally binding guidelines into constitutionally binding guidelines.

For all these reasons, the court concludes that once the safety valve provision is satisfied, the court must look to the advisory Guidelines in determining the appropriate sentence. The court, however, retains discretion to ultimately determine the appropriate punishment. Of course, in exercising its discretion, "the court will give heavy weight to the Guidelines in determining an appropriate sentence."[16] But the Guidelines—which are advisory in all other settings—are advisory in the safety valve setting as well.

### Application to this Case

■ Having resolved *Booker's* effect on the safety valve provision, the court is now in a position to determine defendant Duran's sentence. The facts are as follows: On May 5, 2004, Duran approached a con-

fidential informant and handed him a bag containing two ounces of methamphetamine and two ounces of cocaine. Duran requested that the informant keep the drugs until Duran could deliver it to another individual later that day. Police maintained contact with the informant as he accompanied Duran to several locations to deliver drugs. At one point, the informant was taken to Duran's house, where he was introduced to some individuals, including Francisco and Ruben Vasquez. Ruben Vasquez offered to pay the informant to accompany Francisco Vasquez to Las Vegas, Nevada, for the purpose of picking up a large quantity of controlled substances. The informant agreed and accompanied Francisco Vasquez to Las Vegas. Ruben Vasquez and his wife also went to Las Vegas, but drove in separate cars. While returning home, with drugs in hand, Ruben Vasquez and his wife were stopped by the Nevada Highway Patrol and taken into custody. Francisco and the informant were later arrested in Utah County. Continuing its investigation, law enforcement agents executed a search warrant of Duran's home, in which the agents discovered one ounce of cocaine. Duran was arrested.

In his presentence interview, Duran accepted responsibility for the crime by admitting to participating in drug distribution with the Vasquez brothers for purposes of obtaining drugs for his own use. Furthermore, Duran is a first-time offender. The appropriate Guidelines range therefore starts from a base level offense for conspiracy to possess the relevant quantity of cocaine of 34, decreased by three levels for acceptance of responsibility. Duran also meets the safety valve criteria—which decreased Duran's total offense level an additional two levels to 29.[17] A base offense level

---

**15.** *See. e.g., Clark v. Suarez Martinez,* —— U.S. ——, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005).

**16.** *Wilson,* 350 F.Supp.2D at 911.

**17.** U.S.S.G. § 5C1.2

of 29 and a criminal history of one, results in a guideline range of 87–108 months. While this sentence is below the ten-year (120 month) mandatory minimum, the safety valve provision permits the court to impose this lower sentence. Both the government and Duran agree that this is the proper Guidelines calculation.

Duran argues for a sentence even lower than 87 months, citing his lack of criminal record and his remorsefulness for his crime. These facts, however, are already fully reflected in the advisory Guidelines sentence. As explained in *Wilson,* "In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons."[18] The defendant has not provided any good reason for believing that the Guidelines sentence is inappropriate in this case. Accordingly, the court—in exercising its discretion—will follow the advice of the Guidelines and impose an 87–month sentence

### Judgment Held Open

At oral argument on this matter, the government requested time to consult with the Justice Department officials in Washington, D.C., to coordinate its position on this safety valve issue. Accordingly, the court will hold the judgment in this matter open for an additional 14 days from the date of this order to allow the government to file any objection to the court's statutory analysis. Indeed, the court would appreciate the U.S. Attorney's Office seeking to consult with its colleagues in Washington to determine what the Justice Department's position is on the question discussed here. Otherwise, the U.S. Attorney's Office in Utah might inadvertently take a different position from their colleagues elsewhere in the country. Inconsistent positions on such an important issue as applying the safety valve run the risk of creating differing sentences around the country. While *Booker* renders the Guidelines advisory, the court is still obligated to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct...."[19] As *Wilson* explains, "the only way of avoiding gross disparities in sentencing from judge-to-judge and district-to-district is for sentencing courts to apply some uniform measure in all cases."[20] The Justice Department has an important role to play in insuring uniformity. The court would appreciate understanding how the Department intends to approach this issue in other cases before entering final judgment in this matter.

### CONCLUSION

The court holds that the safety valve provision, 18 U.S.C. § 3553(f), once satisfied, incorporates advisory Guidelines that gives the court discretion to impose any appropriate punishment. In exercising that discretion, the court will give "heavy weight" to the advisory Guidelines sentence. In this case, the court imposes an 87–month sentence, the recommended Guidelines sentence. The Judgment is held open to permit the government to evaluate its position.

### POST–SCRIPT

The government has now filed a new pleading confessing error as to its earlier argument. The government now agrees that an interpretation of the safety valve "that treats the Guidelines as mandatory cannot be reconciled with *Booker.*"[21] Ac-

---

**18.** *Wilson,* 350 F.Supp.2d at 911.

**19.** 18 U.S.C. § 3553(a)(6).

**20.** *Wilson.* 350 F.Supp.2d at 923.

**21.** Government's Position with Respect to Application of the Safety Valve at 1.

cordingly, the court will adhere to its earlier ruling and now enter judgment for an 87–month sentence.